1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WILLIAM D. GAUSLING,                         No.  2:24-cv-0301-DMC

12                   Plaintiff,

13          v.                                      MEMORANDUM OPINION AND ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                     Defendant.
16

17

18          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19    review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20    Pursuant to the written consent of all parties, ECF Nos. 5 and 7, this case is before the

21    undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22    U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos.13 and

23    15.

24          The Court reviews the Commissioner's final decision to determine whether it is:

25    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

1  a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

2  including both the evidence that supports and detracts from the Commissioner's conclusion, must

3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

10  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

11  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

13  Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                          **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§

19  404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20                  Step 1          Determination whether the claimant is engaged in
                                    substantial gainful activity; if so, the claimant is presumed
21                                  not disabled and the claim is denied;

22                  Step 2          If the claimant is not engaged in substantial gainful activity,
                                    determination whether the claimant has a severe
23                                  impairment; if not, the claimant is presumed not disabled
                                    and the claim is denied;
24
                    Step 3          If the claimant has one or more severe impairments,
25                                  determination whether any such severe impairment meets
                                    or medically equals an impairment listed in the regulations;
26                                  if the claimant has such an impairment, the claimant is
                                    presumed disabled and the claim is granted;
27

28  / / /

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 2, 2020.  See CAR 17.[1]  In the application, Plaintiff claims disability began on November 29, 2018.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 14, 2023, before Administrative Law Judge (ALJ) Matilda Surh.  In a May 8, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1.   The claimant has the following severe impairment(s): cervical spondylosis status post anterior fusion C5-C7, lumbar spinal stenosis, mild osteoarthritis of the hips, chronic obstructive pulmonary disease with continued tobacco use, and right shoulder osteoarthritis;
>
> 2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.   The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; sit for 6 out of 8 hours; stand and/or walk 2 out of 8 hours; occasionally climb, crouch, and/or crawl; occasionally reach overhead; have no exposure to dust, fumes, gases, other pulmonary irritants;
>
> 4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 19-26.

After the Appeals Council declined review on November 29, 2023, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]   Citations are to the Certified Administrative Record (CAR) lodged on March 22, 2024, ECF No. 6.

1

### III.  DISCUSSION

2    In his opening brief, Plaintiff argues: (1) the ALJ erred by ignoring Plaintiff's

3  medically determinable impairments of depression, anxiety, and osteoarthritis in his hands; (2)

4  the ALJ erred by rejecting Plaintiff's testimony about the severity of his symptoms; and (3) the

5  ALJ erred by failing to provide reasons for rejecting lay witness evidence regarding Plaintiff's

6  limitations. See ECF No. 13.

7    **A.    Consideration of Medically Determinable Impairments**

8    To qualify for benefits, the plaintiff must have an impairment severe enough to

9  significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

10  404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently

11  severe to limit the ability to work, the Commissioner must consider the combined effect of all

12  impairments on the ability to function, without regard to whether each impairment alone would be

13  sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42

14  U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of

15  impairments, can only be found to be non-severe if the evidence establishes a slight abnormality

16  that has no more than a minimal effect on an individual's ability to work.  See Social Security

17  Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

18  SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

19  providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20

20  C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

21  See id.

22  / / /

23  / / /

24  / / /

25  / / /

26    [2]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
27  pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
   carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
   appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
28  in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1    At Step 2, the ALJ considered the severity of Plaintiff's impairments. As noted

2    above, the ALJ concluded that Plaintiff had a number of severe impairments but did not list any

3    mental health impairments or osteoarthritis in both hands. See CAR 19. Plaintiff argues that the

4    ALJ's failure to address Plaintiff's depression, anxiety, and osteoarthritis constitutes legal error.

5    See ECF No. 13, pgs. 19-23. The Court disagrees.

6    The burden is on the Plaintiff to establish the severity of his impairment and here

7    Plaintiff did not claim either mental health limitations or osteoarthritis as disabling conditions,

8    alone or in combination, when filing for his initial claim. See 20 C.F.R. §§ 404.1508, 416.908;

9    see also CAR 53. Further, at Plaintiff's disability adjudication hearing, he did not assert that he

10    currently suffers from any such limitations. See CAR 32-51.  The medical record, and Plaintiff's

11    failure to state otherwise, both indicate that neither mental health impairments nor osteoarthritis

12    in his hands, alone or in combination, have more than a minimal effect on Plaintiff's ability to

13    work. Indeed, the medical record shows that Plaintiff repeatedly denied any mental health

14    limitations, at one time stating he does not have anxiety or depression, just frustration with his

15    experience with the VA. See CAR 57; see also CAR at 470 and 1087.

16    To the extent that Plaintiff does have limitations due to mental impairments or

17    osteoarthritis in his hands, any error at Step 2 was rendered harmless by the ALJ's consideration

18    of mental impairments and osteoarthritis at Step 4.  See Ford v. Saul, 950 F.3d 1141, 1154 (9th

19    Cir. 2020).  As Plaintiff notes, at Step 4 the ALJ specifically stated that in January 2022, Plaintiff

20    "'den[ied] any symptoms of a mood disorder.'" See CAR 23 (quoting CAR 1052). Additionally,

21    the ALJ discussed how Plaintiff presented in February 2021 as "fully oriented, well groomed,

22    pleasant, polite, attentive, engaged, and euthymic" and in October 2020, "claimant was calm,

23    cooperative, and in no acute distress." CAR 23-24.  By including these observations in the

24    analysis, the ALJ considered whether Plaintiff suffered from mental limitations severe enough to

25    impact his ability to do basic work activities, concluding they did not.

26    / / /

27    / / /

28    / / /

6

As to Plaintiff's reported osteoarthritis in his hands, the ALJ noted that in April 2019, Plaintiff "had full strength in the upper extremities including grip, but for slightly reduced triceps strength;" in December 2019, Plaintiff had "upper extremities within functional limits; full strength in the bilateral elbows, wrists, and fingers;" and in January 2021, Plaintiff "did not feel 'any weakness' in the bilateral upper and lower extremities, but endorsed numbness." CAR 22-23 (quoting CAR 1166-1167). Given this evidence, the ALJ explicitly found that Plaintiff "has no limitations in handling, fingering, or feeling." CAR 25. Thus, the ALJ addressed the functionality of Plaintiff's hands in Step 4, finding it did not significantly limit Plaintiff's physical ability to do basic work activities.

The Court finds that the ALJ did not err at Step 2 in failing to consider impairments which were never alleged to be disabling, and as to which Plaintiff has not met his initial burden of providing evidence that such impairments more than minimally impact his ability to work. Further, even had the ALJ erred at Step 2, any error in failing to determine that Plaintiff's mental limitations and osteoarthritis in his hands were severe impairments at Step 2 was rendered harmless by the ALJ's consideration of these impairments at Step 4 in determining Plaintiff's residual functional capacity.[3]

### B.    Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

---

[3]      Residual functional capacity is the most a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

1   reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

2   Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

3   504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

4            If there is objective medical evidence of an underlying impairment, the

5   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

6   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

7   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

8            The claimant need not produce objective medical evidence of the
             [symptom] itself, or the severity thereof.  Nor must the claimant produce
9            objective medical evidence of the causal relationship between the
             medically determinable impairment and the symptom.  By requiring that
10           the medical impairment "could reasonably be expected to produce" pain or
             another symptom, the Cotton test requires only that the causal relationship
11           be a reasonable inference, not a medically proven phenomenon.

12           80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
             Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
13

14           The Commissioner may, however, consider the nature of the symptoms alleged,

15   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

16   947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

17   also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

18   inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

19   follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

20   (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

21   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

22   claimant cooperated during physical examinations or provided conflicting statements concerning

23   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

24   claimant testifies as to symptoms greater than would normally be produced by a given

25   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

26   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

27   / / /

28   / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

At Step 4, the ALJ evaluated Plaintiff's subjective statements and testimony. See CAR 21-22. The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant described his symptoms in written submissions, to medical professionals, and at the hearing. . . [lay witness testimony omitted] . . .
>
> The claimant alleged an onset date of November 29, 2018. Prior to the hearing, he alleged an inability to work due to musculoskeletal issues in his back, neck, right knee, right shoulder, and hips and chronic obstructive pulmonary disease (Exhibit 1E/2). In a pain questionnaire dated June 2020, he reported that he could sit "at most 45 minutes" before needing to get up and walk around and did not indicate that either standing or walking increased his pain (Exhibit 3E/7). In a pain questionnaire submitted in March 2021, he stated that any activity lasting beyond 45 minutes could cause pain, including standing and walking (Exhibit 6D/7).
>
> At the hearing, he testified that he could only sit 10-15 minutes and walk 5-10 minutes (Testimony.) He described his lumbar impairment as causing numbness in the right leg "which comes and goes" and caused imbalance. He indicated that pregabalin did not help and that he used a cane outside the house (Id.). He explained that he was unable to work because he fell on the jobsite and became "unsafe to be on the plant," adding that "any accident goes against your record" (Testimony). He explained that this had been due to his blood sugars, which were now under control (Id.). He reported being able to do chores on "good days" with pacing and that COPD sometimes caused shortness of breath, requiring breaks (Id.). For example, if washing dishes, he could only wash for 5 minutes before needing a break and going back to wash more and when mowing a 10'x 10' section of lawn, he would need 3-4 breaks (Id.). He reported having bad days most of the month and disturbed sleep due to pain, noting that he was a side sleeper which was painful on the hips (Id.). On those days, he endorsed playing with his phone, reading the news online, and those days sitting in an orthopedic office chair he had used while teleworking and a chair on the front porch where he smoked (Id.).
>
> He further testified that he was taking medications but not in any other treatment currently (Testimony). He indicated that he was to start Pain Management classes the following week (Id.). He denied that the cervical fusion surgery had relieved pain and indicated that a spinal stimulator was recommended, but "the VA said no." He indicated that some days, depending on how he had slept, he could not rotate his neck from side to side, and therefore avoided driving (Id.). He testified that he had a right knee replacement 13 years earlier and avoided stairs if he could (Id.). He reported taking medication and using an inhaler for COPD, and denied having shortness of breath while sitting (Id.). He described becoming short of breath after walking 10 minutes (Id.). As to his right shoulder, he reported having radiating numbness into his hand (Id.). He stated that he did not take naps during the day and could shop at the grocer store 2-3 times per month (Id.). He denied needing any assistance for dressing or bathing and denied being aware of any side effects from medication (Id.). He reported living with his wife and daughter (Id.). He did not disclose that his grandson also lived in the household (Id.).

CAR 21-22.

Before a lengthy discussion of Plaintiff's medical record, which the Court does not include, the ALJ provided the following analysis:

> The medical evidence of record does not support the claimant's assertions of dysfunction. While the record shows that the claimant has, at some time been diagnosed with cervical, lumbar, hip, and right shoulder musculoskeletal impairments, the objective evidence of record does not support the allegations of a complete inability to work, as further discussed below. Instead, the objective evidence supports a finding that the claimant can perform a range of work at the light to sedentary exertional level. Similarly, while the record shows that the claimant has been diagnosed with chronic obstructive pulmonary disease, the objective evidence does not support his allegations. The record shows that the claimant continued to smoke despite this condition and was capable of the residual functional capacity assessment above, albeit with pulmonary precautions.

CAR 22.

More specifically, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because that degree of limitation is not supported by the objective medical evidence, the course of treatment, or the longitudinal record (of an) individual with the claimant's alleged loss of function. The treatment records reveal that he underwent cervical fusion, followed by routine, conservative treatments and physical therapy for his musculoskeletal issues. No revision surgery has been recommended. He does not need an assistive device to ambulate. He admitted being able to lift 20 pounds no later than December 2019 and was able to walk a mile to the gas station.
>
> Further, he admitted caring for his grandson "all week," and has, at times, admitted that his daily activities are much greater than he has stated at others. For example, as noted above, physical therapy notes repeatedly indicate that the claimant could lift 50 pounds if not lifting from floor level (Exhibit 20F/101, 131, 148, 158, 170, 185, 216, 234, 277). Additionally, although reporting significant sitting and manipulative issues, at the hearing, if not elsewhere, his hobbies in 2022 include sitting on the back porch and playing video games (Exhibit 20F/77, 141). Given the lack of corroborating objective evidence, and objective evidence revealing that the claimant had relatively normal physical examinations, albeit with some reduced range of motion and tenderness to palpation, it is difficult to attribute this level of dysfunction to his severe impairments.

CAR 24-25.

1    In his motion for summary judgment, Plaintiff argues that the ALJ did not state

2 clear and convincing reasons for rejecting Plaintiff's testimony as to the severity of Plaintiff's

3 pain and limitations. See ECF No. 13, pg. 7. The Commissioner maintains that 42 U. S. C. §

4 405(g) requires the that the ALJ rely on substantial evidence to reject Plaintiff's symptom

5 testimony, not a clear and convincing standard. See ECF No. 15, pg. 5. However, the

6 Commissioner asserts that even if the Court were to apply the clear and convincing standard here,

7 the ALJ met that requirement. See id.

8    As the Commissioner notes, and this Court agrees, "the ALJ did not hold that

9 Plaintiff's examinations showed no limitations, but rather that the objective evidence contradicted

10 the extent of his claims and instead showed that he could perform a range of sedentary-light

11 work." ECF No. 15, pg. 6. In the context of discussion of the weight given to various medical

12 opinions of record, the ALJ asserted specific findings supporting the ALJ's findings as to

13 Plaintiff's subjective statements and testimony, as follows:

14
15
16
17
18
19
20
. . .I am not persuaded that the claimant is limited in holding, feeling, and
fingering with the right hand due to a recent hand injury because that
injury did not last and did not require significant follow up, improving
with repair and physical therapy. However, I am persuaded that the
claimant would be capable of pushing, pulling, lifting, and carrying 20
pounds occasionally and 10 pounds frequently; standing and/or walking 2
hours; sitting 6 hours; occasionally bending and stooping; and
occasionally reaching overhead on the right because these limitations are
supported by explanation and consistent with the record as a whole.
Additionally, these limitations are tied to objective evidence regarding the
claimant's severe impairments and adequately take into account the
claimant's reports of symptoms.

21
22
23
24
25
26
27
28
I am also partially persuaded by the opinions at the initial and
reconsideration levels (Exhibits 1A, 3A). Specifically, I am not persuaded
by the portion of the opinion that the claimant is limited to frequent
balancing, as it is defined in the DOT [Dictionary of Occupational Titles],
because the evidence of record does not support such limitation. I am
persuaded that the claimant has no limitations in handling, fingering, or
feeling (as discussed above), but is limited to only overhead reaching (due
to neck and shoulder pain in his right shoulder osteoarthritis). As noted
above, I am persuaded that the claimant would be capable of pushing,
pulling, lifting, and carrying 20 pounds occasionally and 10 pounds
frequently; standing and/or walking 2 hours; sitting 6 hours; occasionally
climbing, stooping, crouching, crawling, and reaching overhead because
these limitations are supported by explanation and consistent with the
record as a whole. However, I am not persuaded that the claimant does not
have additional limitations to avoid pulmonary irritants, heights, and

11

dangerous moving machinery. Further, I find it reasonable that a cane may be necessary for ambulation.

CAR 25-26.

Thus, the Court finds that the ALJ made the specific findings, as quoted above, required to discount a Plaintiff's testimony as to the severity of his limitations. See Carmickle, 533 F.3d at 1161 (citing Swenson, 876 F.2d at 687).

Plaintiff further argues that the ALJ improperly relied "solely on a lack of medical evidence" when rejecting Plaintiff's "subjective complaints." ECF No. 13, pg. 8 (quoting Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)).  However, undermining this contention, Plaintiff acknowledges that the ALJ relied on "(i) the objective medical evidence, (ii) the 'conservative' course of treatment, and (iii) Plaintiff's activities" when "reject[ing] Plaintiff's testimony about his symptoms and limitations." Id. at 6-7. Thus, the ALJ's specific finding properly relied on objective medical evidence, course of treatment, and Plaintiff's activities when deciding to reject Plaintiff's testimony. See Rashad, 903 F.2d at 1231 (9th Cir. 1990); Bunnell, 947 F.2d at 345-47; Smolen, 80 F.3d at 1284 (citations omitted).  In other words, contrary to Plaintiff's assertion, the ALJ did not rely solely on inconsistency with the objective medical evidence.

Each of the ALJ's reasons – inconsistency with objective medical evidence, conservative course of treatment, and Plaintiff's daily activities – are each discussed below and found to be supported by substantial evidence.

        1.    Objective Medical Evidence

Plaintiff contends that the ALJ's "finding [as to the objective evidence] is unfounded to an extent that approaches the absurd." ECF No. 13, pg. 9. In support of this argument, Plaintiff compares the ALJ's conclusions with various portions of the medical record. See id. at 10-12. However, Plaintiff begins by misstating the ALJ's findings. Plaintiff asserts that the ALJ concluded that Plaintiff is "essentially 'intact' with just a mild limp." Id. at 11. However, the ALJ actually stated that Plaintiff "had full muscle power in the upper and lower extremities and intact sensation to light touch, pin, joint position, and double simultaneous stimulation throughout. (Id.) The claimant walked with a limp and did not use any assistive device." CAR 24.

1    This statement is consistent with the cited medical record that found that Plaintiff was "using

2    nothing to assists with ambulation;" Plaintiff's right hip was "sensation intact to light touch;" and

3    Plaintiff was "ambulating with a slow, steady limp." CAR 445-446.

4              Plaintiff next claims that the ALJ's characterization of the results of Plaintiff's

5    physical therapy is "incomplete and lacks context to an extent that is misleading." ECF No. 13,

6    pg. 12.  In support of this contention, Plaintiff quotes portions of the physical therapy evaluation,

7    notably only quoting from "areas that need to be addressed further," leaving out the portion of the

8    evaluation that outlined Plaintiff's improvements. CAR 432; see ECF No. 13, pg. 12. According

9    to Plaintiff, the "context of the overall record . . . has no tendency to show meaningful, sustained

10   improvement as the ALJ's narrative suggests." ECF No. 13, pg. 12. The ALJ's only discussion of

11   the results of Plaintiff's physical therapy stated that initially, Plaintiff could only walk or drive

12   five minutes and after fourteen sessions, Plaintiff could "tolerate sitting and driving 45 minutes

13   and walking 15 minutes." CAR 23. This progress accurately reflects the notes from Plaintiff's

14   physical therapy evaluation. See CAR 433. Additionally, the ALJ's use of the word "tolerate"

15   demonstrates that the ALJ was not overstating the results of Plaintiff's physical therapy.

16             Next, Plaintiff claims that the information the ALJ presented about the Plaintiff not

17   wanting to use a walker or cane is "lacking for context and tending to mislead." ECF No. 13, pg.

18   12. However, the medical record states that Plaintiff expressed that he did not need a walker and

19   did not want to use a cane. See CAR 1159; 1166. Plaintiff claims the ALJ used the "refusal of the

20   walker as evidence his walking limitations are not as [Plaintiff] says." ECF No. 13, pg. 13. The

21   ALJ never makes such an assertion. In fact, the ALJ concludes at Step 4 by stating: "I find it

22   reasonable that a cane may be necessary for ambulation." CAR 26.  This indicates that the ALJ

23   appreciated that, while Plaintiff himself denies the need for a walker or cane, one might be

24   necessary given his actual limitations.

25             Plaintiff cites additional "erroneous cherry-picking of the medical evidence" by

26   the ALJ to argue that the ALJ's summary did not meet the requisite clear and convincing standard

27   necessary to reject Plaintiff's subjective testimony. See ECF No. 13, pgs. 13-16. However, each

28   of these instances that Plaintiff points to are factually irrelevant to the ALJ's ultimate

13

1    determination. For example, Plaintiff claims that the ALJ "discredit[ed] Plaintiff's statements

2    broadly because he has a substance problem" ECF No. 13, pg. 14. While the ALJ did note

3    Plaintiff's substance use in relation to his inability to access certain treatments due to such use,

4    the ALJ never indicated that determination relied on, or even considered, Plaintiff's substance

5    use. See CAR 24-26.

6         Next, Plaintiff argues that the ALJ "failed to connect that [medical] summary to

7    her ultimate conclusion." ECF No. 13, pg. 16. This argument is without merit. The ALJ clearly

8    connected Plaintiff's medical history to her conclusion, including references to Plaintiff's

9    physical therapy record, treatment, and Plaintiff's own statements to medical care providers, as

10   discussed throughout. See CAR 25.

11              2.    Course of Treatment

12        As to the ALJ's finding that Plaintiff's conservative course of treatment supports

13   her determination that Plaintiff's impairments were not as severe as his testimony implied,

14   Plaintiff argues that his past surgeries indicate otherwise. See ECF No. 13. pg. 17. As the

15   Commissioner notes, and this Court agrees, those surgeries were before Plaintiff's disability onset

16   date. See ECF No, 15, pgs. 7-8. Additionally, Plaintiff argues that the ALJ did not explain why

17   she characterized Plaintiff's treatment as "conservative." See ECF No. 13, pg. 17. The ALJ

18   specifically points to the fact that Plaintiff's only treatment, after his onset, was physical therapy

19   and injections and that "no revision surgery has been recommended." CAR 25.

20              3.    Plaintiff's Daily Activities

21        Regarding reliance on a claimant's daily activities to discount testimony of

22   disabling pain, the Social Security Act does not require that disability claimants be utterly

23   incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has

24   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

25   does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.

26   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

27   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

28   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

                                        14

1   restricted travel); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

2   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

3   ability to cook meals and wash dishes); <u>Fair</u>, 885 F.2d at 603 (observing that "many home

4   activities are not easily transferable to what may be the more grueling environment of the

5   workplace, where it might be impossible to periodically rest or take medication").

6           The RFC is the most a person "can still do despite [the individual's] limitations."

7   20 C.F.R. §§ 404.1545(a). Thus, while engaging in daily activities does not necessarily discredit

8   an individual's testimony as to their capabilities, engaging in those activities may demonstrate the

9   extent of an individual's capabilities which can be considered in the RFC determination. Daily

10  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

11  his day engaged in pursuits involving the performance of physical functions that are transferable

12  to a work setting." <u>Fair</u>, 885 F.2d at 603.  The ALJ must make specific findings in this regard

13  before relying on daily activities to discount a claimant's pain testimony.  <u>See</u> <u>Burch v. Barnhart</u>,

14  400 F.3d 676, 681 (9th Cir. 2005).

15          Plaintiff argues that the ALJ "never articulated how the sporadic activities she

16  identified – specifically, supervising his grandson for a week and playing video games –

17  conceivably reflect an ability to sustain full time work." ECF No. 13, pg. 18. According to the

18  ALJ, Plaintiff "at times, admitted that his daily activities are much greater than he has stated at

19  others." CAR 25. In support of this contention, the ALJ cites that Plaintiff asserted "significant

20  sitting and manipulative issues" but "his hobbies in 2022 include sitting on the back porch and

21  playing video games." CAR 25 (citations omitted). Thus, the ALJ connected Plaintiff's activities,

22  sitting, at times while playing video games, to her RFC determination that Plaintiff can sit for six

23  hours. CAR 25.

24          Plaintiff next argues that "the ALJ's generalizations do not demonstrate any

25  genuine contradictions in Plaintiff's testimony about his activities" because Plaintiff admits to

26  having "good days and bad days." ECF No. 13, pg. 18. Plaintiff asserts that the ALJ drew

27  conclusions as to his RFC that reflected Plaintiff's 'good days' without considering his

28  limitations on those 'bad days.' <u>Id.</u> The Court disagrees. The ALJ cited Plaintiff's hearing

1  testimony where Plaintiff stated that he spent his "the bulk of [his bad] days sitting in an

2  orthopedic office chair . . . and a chair on the front porch." CAR 22 (citing CAR 43). Thus,

3  concluding that Plaintiff's RFC includes sitting up to six hours exactly reflects Plaintiff's own

4  testimony about what he does on his bad days – sit.

5          **C.      <u>Lay Witness Opinions</u>**

6          The new regulatory framework, which applies to claims filed, as here, after March

7  27, 2017, identifies five categories of evidence: (1) objective evidence; (2) medical opinions; (3)

8  "other" medical evidence; (4) evidence from non-medical sources; and (5) prior administrative

9  medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With respect to evidence from non-medical

10  sources—the category under which lay testimony falls—the revised regulations expressly provide

11  that the agency is "not required to articulate how we considered evidence from non-medical

12  sources using the requirements [set forth] in paragraphs (a) through (c) in this section." 20 C.F.R.

13  § 416.920c(d). Thus, the revised regulations distinguish between evidence the ALJ is required to

14  "consider" and evidence that requires the ALJ to "articulate" how the evidence was considered.

15  Based on a plain reading of the revised regulations, the new regulatory framework requires an

16  ALJ to *consider* lay testimony but does not necessarily require the ALJ to articulate *how* it was

17  considered.

18          To the extent the ALJ is required to "consider" lay witness testimony, the Court

19  still reviews for legal error and substantial evidence. The Court ascertains no contradiction

20  between the new regulations and Ninth Circuit caselaw setting forth the harmless error standard;

21  the new regulations' requirement to "consider" lay witness testimony, in fact, does not

22  significantly differ from the Ninth Circuit's reading of the prior administrative framework:

23          The applicable regulations … require the ALJ to consider testimony from
            family and friends submitted on behalf of the claimant, *see* 20 C.F.R. §§
24          404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide
            express reasons for rejecting testimony from each lay witness, *see id*.; *see*
25          *also* SSR 06–03p (recognizing that "there is a distinction between what an
            adjudicator must consider and what the adjudicator must explain in the
26          disability determination or decision").

27          <u>Molina</u>, 674 F.3d 1104, 1114 (9th Cir. 2012).

28

                                        16

1        In Molina, the Ninth Circuit applied the harmless error standard to uphold the

2   ALJ's rejection of lay witness testimony—even though the ALJ did not provide any reasons for

3   rejecting it—on the basis that the ALJ's reasons for rejecting the claimant's symptom testimony,

4   which were upheld, were equally relevant to the similar testimony of the lay witness. Id. at 1114–

5   15. The Ninth Circuit explains that "[w]here lay witness testimony does not describe any

6   limitations not already described by the claimant, and the ALJ's well-supported reasons for

7   rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be

8   inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay

9   witness testimony to be prejudicial per se." Molina, 674 F.3d at 1117.

10       At Step 4, the ALJ evaluated the nonmedical evidence, including lay-witness

11  testimony by Plaintiff's wife, Teresa Gausling.  The ALJ summarized her testimony as follows:

> The claimant's wife, Teresa Gausling, submitted third-party function
> report and indicated that he "tried to take care of" her, noting that he
> cooked, brought her water, turned on the shower for her, and helped her
> with her activities of daily living (Exhibit 7E). She indicated that he
> performed chores such as laundry and vacuuming, which increased his
> pain. She reported that he enjoyed reading every day, watch TV every day,
> sometimes went for a ride with their son, sometimes went on a short
> camping trip in an RV, and like to play cards and perform magic with their
> grandchildren. She indicated that he had limitations in lifting, squatting,
> bending, standing, reaching, walking, and climbing (Id.).
>
> CAR 21.

19       Plaintiff argues that the ALJ committed legal error by failing to "address or

20  explain the rejection of Ms. Gausling's testimony" ECF No. 13, pg. 24. Further, Plaintiff asserts

21  that the ALJ "was required to evaluate the testimony from family members." Id. Plaintiff

22  contends that the ALJ's failure to do so was not harmless because it "prejudiced other dispositive

23  findings" and, according to Plaintiff, "the ALJ here did not incorporate or reference her rejection

24  of Plaintiff's testimony at all in silently rejecting Ms. Gausling's third-party testimony." Id. at 25.

25  The Commissioner argues that Plaintiff's argument "is dependent upon case law developed under

26  the prior regulatory scheme." ECF No. 15, pg. 9.  Additionally, the Commissioner asserts that

27  even if the Court were to find otherwise, any error here would be harmless because Ms.

28  Gausling's testimony "essentially duplicat[es] Plaintiff's allegations." Id. at 12.

17

1    The Court agrees with the Commissioner that the new regulatory framework

2 requires an ALJ to consider lay testimony but does not necessarily require her to articulate how

3 she considered it. Plaintiff's argument that the ALJ was required to provide reasons for rejecting

4 Ms. Gausling's testimony relies solely on caselaw that predates the revision. See ECF No. 13,

5 pgs. 23-26. As to Plaintiff's argument that the ALJ was also required to consider testimony from

6 family members, the Court finds the ALJ did in fact consider Ms. Gausling's testimony, as

7 indicated by the ALJ's summary of that testimony within her report. Under the new regulatory

8 framework, the ALJ is not required to articulate how such nonmedical evidence was considered.

9    Further, the Court finds the ALJ's rejection of Ms. Gausling's testimony was

10 harmless because, as the Commissioner notes, her testimony was consistent with Plaintiff's own

11 account. Plaintiff concedes this by stating that Ms. Gausling's testimony "corroborat[es]

12 Plaintiff's pain testimony." ECF No. 13, pg. 23. The ALJ states in her decision that she

13 considered the evidence, which necessarily includes the lay testimony, she discounted the

14 Plaintiff's testimony, and reached a finding of nondisability. See CAR 24. Because the Court has

15 determined the ALJ provided valid reasons to discount Plaintiff's similar testimony,[4] any error in

16 failing to discuss the reasons for rejecting Ms. Gausling's testimony was harmless.

17    For the foregoing reasons, the Court finds that the ALJ did not err with respect to

18 lay witness evidence.

19 ///

20 ///

21 ///

22 ///

23

24    [4]    The Court notes that Plaintiff implies that Ms. Gausling's testimony differs from
   Plaintiffs because it "does not mention anything about extended video game playing or Plaintiff
25 consistently caring for his grandchild." ECF No. 13, pg. 23. However, just because Ms.
   Gausling's testimony does not include two activities that Plaintiff discussed does not mean her
26 testimony differs from Plaintiff's. By way of example, Ms. Gausling states that Plaintiff reads and
   watches T.V. daily. These activities require the same mobility that playing video games does, and
27 many video games are played on T.V. Thus, Ms. Gausling's testimony is consistent with
   Plaintiff's.
28

1

**IV.  CONCLUSION**

2          Based on the foregoing, the Court concludes that the Commissioner's final

3 decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4 ORDERED that:

5          1.     Plaintiff's motion for summary judgment, ECF No. 13, is denied;

6          2.     Defendant's motion for summary judgment, ECF No. 15, is granted;

7          3.     The Commissioner's final decision is affirmed; and

8          4.     The Clerk of the Court is directed to enter judgment and close this file.

9

10 Dated:  January 30, 2025

11                                              DENNIS M. COTA
                                                UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19